# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPE GUERRA SANCHEZ,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>RONALD RACKLEY,<br><br>　　　　Respondent. | Case No. 1:16-cv-00604-LJO-EPG-HC<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Felipe Guerra Sanchez is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Petitioner raises the following claims for relief: (1) the trial court's erroneous exclusion of reliable hearsay statements from two unavailable witnesses; (2) violation of Petitioner's rights under the Confrontation Clause of the Sixth Amendment; and (3) cumulative errors.

For the reasons discussed herein, the Court recommends denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

On February 2, 2012, Petitioner was convicted by a jury in the Fresno County Superior Court of first-degree murder. (2 CT[1] 375). The trial court sentenced Petitioner to an

---

[1] "CT" refers to the Clerk's Transcript on Appeal lodged by Respondent on May 23, 2017. (ECF No. 29).

1

imprisonment term of twenty-five years to life. (2 CT 401). On July 18, 2014, the California Court of Appeal, Fifth Appellate District modified the sentence to reflect an additional 626 days of presentence conduct credit, and so modified, affirmed the judgment. People v. Sanchez, No. F064627, 2014 WL 3555780, at *1 (Cal. Ct. App. July 18, 2014). The California Supreme Court denied Petitioner's petition for review on October 1, 2014. (LD[2] 21, 22).

On April 29, 2016, the Court received the instant petition for writ of habeas corpus. (ECF No. 1). On July 1, 2016, Respondent filed a motion to dismiss, arguing that the petition was filed outside the one-year limitation period. (ECF No. 14). On March 21, 2017, the Court denied the motion without prejudice. (ECF No. 24). Respondent has filed an answer to the petition, and Petitioner has filed a traverse. (ECF Nos. 28, 33).

## II.

## STATEMENT OF FACTS[3]

*1985 Homicide Investigation*
The investigation into the victim's death began on the morning of November 8, 1985. Pete Chavez, then a homicide detective for the Fresno County Sheriff's Department, responded to a report of a body found on the outskirts of San Joaquin, a rural community located in the western region of the county. A deceased woman, estimated to be in her 30s, had been discovered lying face down in a field next to a dirt road. She appeared to have been run over by a car.

Ralph Preheim, the sheriff's criminologist, processed the scene. This entailed photographing the victim and her surroundings, taking measurements of fresh tire tracks left near the body, and collecting physical evidence. Deputy Preheim determined the point of initial impact to be an area in the road where investigators found a shoe and fragments of glass. There were footprints and tire tracks leading into the field where the victim lay. The tire tracks extended beyond the corpse in a manner which suggested the woman had been run over twice; once when the vehicle entered the field and again as it reversed back out onto the road. A second shoe was found next to the body, as was a purse containing approximately $64 in cash.

Detective Chavez spoke to a witness at the scene who recognized the victim from a local bar called La Pantera Azul. The owner of the bar helped police identify the decedent as Carmen Achutegui, also known by the nickname "Cuchi Cuchi." According to some witnesses, Ms. Achutegui was reputed to be a prostitute.

Statements from employees and patrons of La Pantera Azul placed Ms. Achutegui at the bar in the early morning hours of November 8, 1985. A waitress

---
[2] "LD" refers to the documents lodged by Respondent on May 23, 2017. (ECF No. 29).
[3] The Court relies on the California Court of Appeal's July 18, 2014 opinion for this summary of the facts of the crime. See Vasquez v. Kirkland, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

2

remembered seeing her at approximately 1:00 a.m., one hour before closing time. Other witnesses observed Ms. Achutegui conversing with a man whom police later identified as Felipe Sanchez.

Further investigation revealed that Sanchez had been staying with friends in a trailer located a few blocks away from La Pantera Azul. Two of the trailer's occupants told Detective Chavez they had last seen Sanchez in a drunken state on the morning of Ms. Achutegui's death. The men recalled waking up in the middle of the night to find Sanchez vomiting in the restroom and saying that he needed to leave town because he had killed two women. The investigating officers never found a second homicide victim, nor did they succeed in locating Sanchez.

*2008 Identity Theft Investigation*
In June 2008, the California DMV discovered that two men, each purporting to be Jose Manuel Rodriguez, were simultaneously using the same social security number. It was determined that the real Jose Manuel Rodriguez lived in Fresno. The unauthorized use of Mr. Rodriguez's information was traced back to Sanchez, who was then working for a trucking company in Manteca.

DMV investigators arrested Sanchez in October 2008. After waiving his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436), Sanchez participated in an unrecorded interview during which he was asked about the death of Carmen Achutegui. Sanchez admitted being at La Pantera Azul on the night in question and told the investigators that Ms. Achutegui had been flirting with him. He confessed to hitting her with his car, but claimed his memory of the events was spotty because he had been extremely intoxicated at the time. The confession contained contradictory statements about how the incident occurred, none of which matched up with the physical evidence found at the scene. Sanchez said he kept driving after hitting the victim, and suggested a second vehicle travelling behind him must have run over Ms. Achutegui in the field.

Sanchez further admitted to fleeing south after the killing, abandoning his car on the streets of Los Angeles, and buying a bus ticket to Mexico. The make and model of the automobile was never confirmed. Witness statements obtained in 1985 variously described the vehicle as a mid–1970s Ford LTD four-door sedan or a Mercury Cougar, with brown or maroon paint. Sanchez told investigators he had owned a brown 1969 Dodge Coronet and later drove a 1979 Pontiac Trans Am.

*Trial and Sentencing*
The Fresno County District Attorney charged Sanchez with a single count of murder (Pen. Code, § 187, subd. (a)). The matter was tried before a jury in January and February 2012.

The prosecution theorized that Ms. Achutegui survived an initial roadway collision with Sanchez's car and then ran towards the location where her body was found. In other words, Sanchez allegedly drove into the field in pursuit of the victim, struck her from behind while she was running, and purposely crushed her body under the weight of his vehicle. Crime scene photos and the results of a subsequent autopsy were consistent with this theory. The medical examiner's trial testimony described the cause of death as a "crush injury to the chest," resulting in severely lacerated and collapsed lungs, 10 broken ribs, and several other internal injuries.

Sanchez's own accident reconstruction expert agreed that the tire tracks left at the scene were indicative of an intentional effort to navigate the automobile off the road and into the field. Defense counsel questioned the motive for such behavior, particularly because there were no signs of robbery or sexual assault. There was, however, DNA evidence which showed Sanchez had sex with the victim within approximately 24 hours of her death.

The prosecution's case-in-chief included testimony from a number of Sanchez's friends and acquaintances, most of whom were reluctant to answer questions about his behavior on the night of Ms. Achutegui's death. Among these witnesses were Salvador Martinez and Jose Orozco, the two men who told Detective Chavez that they had heard Sanchez admit to killing two women. Mr. Orozco confirmed this information at trial and also testified to seeing a dent in the front of Sanchez's car, "as if it had hit something." Salvador Martinez, however, changed his original story by claiming Sanchez told him he had killed a wild animal. Mr. Martinez also acknowledged receiving an anonymous phone call prior to trial from someone who threatened him with retribution if he testified against the defendant. Transcripts of recorded jailhouse phone calls between appellant and his brother suggested that Sanchez's family members attempted to influence the testimony of Mr. Martinez and several other witnesses.

Sanchez's defense strategy focused on reinterpreting the physical evidence to support a theory of third party culpability. Most of these efforts relied on Deputy Preheim's track width measurements at the crime scene, which measured 62.5 inches.[4] A defense expert compared this measurement against a vehicle database containing the track widths for cars manufactured during the 1960s and 1970s to determine if any of the automobiles linked to Sanchez could have made the same tracks. The expert found that the 1969 Dodge Coronet had a track width of only 60 inches. The 1979 Pontiac Trans Am had a track width of 61 inches. Most models of the Ford LTD and Mercury Cougar had track widths ranging from 64–67 inches depending on the year and body style, though a few versions of the Cougar measured 63 inches. The expert's findings were rounded to the nearest inch based on the original wheel and tire sizes of each vehicle. The latter assumption was critical, since it was conceded that the use of after-market parts and other customizations could change the track width of any given car.

Sanchez, 2014 WL 3555780, at *1–3 (footnote in original).

## III.

## STANDARD OF REVIEW

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed

---

[4] Deputy Preheim measured the horizontal distance between the rear tires of the vehicle based on his determination of which tracks were made by the back tires as opposed to the front tires. It was his custom and practice to measure between the center lines of each tire if those points could be determined from the tracks. As explained by the defense expert, accident reconstructionist Robert Liebbe, the proper term for such a measurement is "track width."

4

by the United States Constitution. The challenged convictions arise out of the Fresno County Superior Court, which is located within the Eastern District of California. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc). The instant petition was filed after the enactment of AEDPA and is therefore governed by its provisions.

Under AEDPA, relitigation of any claim adjudicated on the merits in state court is barred unless a petitioner can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Davis v. Ayala, 135 S. Ct. 2187, 2198 (2015); Harrington v. Richter, 562 U.S. 86, 97–98 (2011); Williams, 529 U.S. at 413. Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards" apply. Ayala, 135 S. Ct. at 2198. However, if the state court did not reach the merits of the claim, the claim is reviewed *de novo*. Cone v. Bell, 556 U.S. 449, 472 (2009).

In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In addition, the Supreme Court decision must "'squarely address[] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent required by the Supreme Court in . . . recent decisions"; otherwise, there is no clearly established Federal law for purposes of review under AEDPA and the Court must defer to the state court's decision. Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2008) (alterations in original) (quoting Wright v. Van Patten, 552 U.S. 120, 125, 123 (2008)).

1. If the Court determines there is clearly established Federal law governing the issue, the Court then must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, [the] clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A state court decision involves "an unreasonable application of[] clearly established Federal law" if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Richter, 562 U.S. at 102. That is, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

If the Court determines that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," and the error is not structural, habeas relief is nonetheless unavailable unless it is established that the error "had substantial and injurious effect or influence" on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation mark omitted) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

AEDPA requires considerable deference to the state courts. The Court looks to the last reasoned state court decision as the basis for the state court judgment. See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015); Johnson v. Williams, 568 U.S. 289, 297 n.1 (2013); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Walker v. Martel,

709 F.3d 925, 939 (9th Cir. 2013). "Independent review of the record is not *de novo* review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). The federal court must review the state court record and "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## IV.

## REVIEW OF CLAIMS

### A. Exclusion of Hearsay Statements from Unavailable Witnesses

In his first and second claims for relief, Petitioner asserts that his due process right to present a complete defense was violated by the trial court's exclusion of hearsay statements from two unavailable witnesses, Robert Alejo and John Apodaca. (ECF No. 1 at 5, 7). Respondent argues that the state court's rejection of these claims was reasonable. (ECF No. 28 at 12).

These claims were raised on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claims in a reasoned decision. The claims were also raised in the petition for review, which the California Supreme Court summarily denied. As federal courts review the last reasoned state court opinion, the Court will "look through" the summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's exclusion of hearsay evidence claims, the California Court of Appeal stated:

> *Background*
> Sanchez moved in limine for permission to introduce hearsay statements made by two people who were no longer alive at the time of trial. Both declarants spoke with sheriff's deputies during the early stages of their investigation into Ms. Achutegui's death. Proof of the witnesses' statements and the circumstances under which they were made was limited to the contents of two police reports. Our summary of the proffered evidence comes from those reports.

Robert Alejo, then a farm laborer working in the San Joaquin area, was brought to the crime scene by his employer on the morning of November 8, 1985 to speak with detectives about the homicide. The details of what precipitated this meeting are unknown. Mr. Alejo believed he was familiar with the victim, though it does not appear that he ever saw the dead body. The police report states: "I advised Mr. Alejo of a female's body being found at this location and described the victim to him and Mr. Alejo [said] the description of the victim matched that of a female he knows only by the nickname of 'La Huerda.' Mr. Alejo stated he has known this female for some time and knows her to be a barmaid working at La Pandeda Bar located in the City of San Joaquin." (Capitalization omitted.)

Mr. Alejo had seen "La Huerda" approximately two weeks earlier in the same area where the victim was found. She was accompanied by two Hispanic males and one Hispanic female. The group congregated around a green Ford Torino coupe. The police report contains detailed descriptions of the three companions, but no identifying information about "La Huerda."

"Mr. Alejo proceeded to state [that] he has seen the two described male subjects on prior occasions in the City of San Joaquin and has seen [one of the men] with La Huerda on occasions. Mr. Alejo stated he has on other occasions seen La Huerda in the subject's green Ford Torino parked at this location." (Capitalization omitted.) In addition, the witness informed detectives that he drove by the vicinity of the crime scene at 7:00 p.m. on November 7, 1985, and again at approximately 5:30 a.m. and 6:30 a.m. the next day, but saw no one in the area at those times.

The second declarant was John Apodaca. Speaking with a detective on the afternoon of November 9, 1985, Mr. Apodaca "said that a subject named Valariano (Shorty) Flores had stated that he had seen the victim and Felipe Sanchez leave the bar together on the morning of the homicide." (Capitalization omitted.) Mr. Apodaca further advised that he personally witnessed a vehicle drive out of the field (i.e., the crime scene) at approximately 2:00 p.m. or 3:00 p.m. on the afternoon of November 7, 1985. He described the car as a four-door Mercury Cougar with reddish/brown paint. An individual named "Daniel" (last name unknown) told Mr. Apodaca that the driver of the car was Felipe Sanchez.

Sanchez's motion in limine acknowledged the statements attributed to Mr. Alejo and Mr. Apodaca were hearsay, but argued that excluding the evidence would violate his constitutional due process rights. Defense counsel attempted to draw parallels between the facts of Sanchez's case and those in *Chambers v. Mississippi* (1973) 410 U.S. 284 (*Chambers*), and also made passing reference to *Green v. Georgia* (1979) 442 U.S. 95. No other cases were cited in the moving papers.

The motion was heard on December 7, 2011, at which point the trial court found the evidence did not fall within an exception to the hearsay rule, and was thus inadmissible. The trial court also discussed at length the requirements set forth in Evidence Code section 1350, which it referred to as the "Unavailable Declarant Hearsay Rule."[5] Concerned the judge had lost sight of his arguments, Sanchez

---

[5] Evidence Code section 1350 establishes a hearsay exception in serious felony cases for out-of-court statements made by an unavailable witness when "there is clear and convincing evidence that the declarant's unavailability was knowingly caused by, aided by, or solicited by the party against whom the statement is offered for the purpose of preventing the arrest or prosecution of the party and is the result of the death by homicide or the kidnapping of the declarant." The exception is designed to aid the prosecution, if warranted under the circumstances of the case, and would not ordinarily be invoked by a defendant. (See Evid.Code, § 1350, subd. (b).)

8

filed a motion for reconsideration. The second motion was heard on January 18, 2012, approximately five days prior to the start of trial. The court again ruled to exclude the evidence, this time distinguishing *Chambers, supra,* and finding that the "factors indicating the trustworthiness of the out-of-court statements" at issue in the *Chambers* decision were "truly non-existent in the case at hand."

Incidentally, the information contained in the police reports was later admitted into evidence for non-hearsay purposes. Sanchez does not acknowledge this in his briefs. All of his arguments on appeal concern the propriety of the trial court's ruling at the in limine stage.

*Standard of Review*
"[A]n appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence, including one that turns on the hearsay nature of the evidence in question." (*People v. Waidla* (2000) 22 Cal.4th 690, 725, citations omitted.) This standard is deferential to the trial court's evaluation of the evidence from a factual standpoint, including those findings which pertain to the trustworthiness of a declarant's out-of-court statements. (*People v. Edwards* (1991) 54 Cal.3d 787, 820 ["A reviewing court may overturn the trial court's finding regarding trustworthiness only if there is an abuse of discretion."]; see *People v. DeHoyos* (2013) 57 Cal.4th 79, 132 (*DeHoyos*) ["[A] trial court has broad discretion to determine whether a party has established the foundational requirements for a hearsay exception...."].)

*Analysis*
Sanchez claims the hearsay contained in the 1985 police reports was admissible by virtue of the "indicia of reliability" found in the statements themselves and the circumstances under which they were made. He further contends that "[b]ecause the missing testimony was sufficient to raise a reasonable doubt as to [appellant's] guilt, and because the statements were admissible under general reliability principles, this Court should find that the improper exclusion of the evidence was prejudicial, requiring reversal of the judgment." We find no merit in these arguments.

" 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid.Code § 1200, subd. (a).) Unless subject to an exception, hearsay is inadmissible. (*Id.,* subd. (b).) " 'The chief reasons for this general rule of inadmissibility are that the statements are not made under oath, the adverse party has no opportunity to cross-examine the declarant, and the jury cannot observe the declarant's demeanor while making the statements.' " (*People v. Duarte* (2000) 24 Cal.4th 603, 610, quoting *People v. Fuentes* (1998) 61 Cal.App. 4th 956, 960–961.)

Sanchez's arguments concerning "general reliability principles" and a supposed "indicia of reliability" exception to the hearsay rule seem to allude to Rule 807 of the Federal Rules of Evidence. This rule allows the introduction of otherwise inadmissible hearsay when it is shown that the evidence possesses "circumstantial guarantees of trustworthiness" (among other prerequisites). (Fed. Rules Evid., rule 807, subd. (a).) However, "California, unlike federal courts and some state jurisdictions, does not have a 'residual hearsay' exception that permits any hearsay statement into evidence as long as it bears sufficient indicia of reliability." (*In re Cindy L.* (1997) 17 Cal.4th 15, 27–28; accord, *People v. Gonzales* (2012) 54 Cal.4th 1234, 1289 & fn. 24.)

9

Because the hearsay did not fall within a statutory exception, Sanchez must show the trial court's ruling contravened binding judicial precedent in order to establish an error under state law. (*People v. Ayala* (2000) 23 Cal.4th 225, 268 (*Ayala*) [" 'exceptions to the hearsay rule are not limited to those enumerated in the Evidence Code; they may also be found in ... decisional law.' "].) No such showing has been made. Instead, appellant cites to a number of plainly inapposite cases which deal with the right of confrontation under the Sixth Amendment to the federal Constitution and the admissibility of hearsay without opportunity for cross-examination in the era predating *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*).

In particular, Sanchez claims *Idaho v. Wright* (1990) 497 U.S. 805 (*Wright*) stands for the proposition "that even though hearsay is usually inadmissible if it does not fall under some exception to the hearsay rule, the statement of an unavailable witness can be admitted if it bears adequate indicia of reliability." This contention is far off the mark. The *Wright* opinion held that failure to exclude certain hearsay statements made by a two-and-one-half-year-old girl to a pediatrician, which were admitted at trial pursuant to a residual hearsay exception in Idaho's evidence code, violated the defendant's constitutional right to confront the witness.

The *Wright* decision relied on the holding in *Ohio v. Roberts* (1980) 448 U.S. 56 (*Roberts*) [overruled by *Crawford, supra,* 541 U.S. at pp. 60–69], which provided general guidelines for determining "when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause." (*Wright, supra,* 497 U.S. at p. 814.) Under the *Roberts* approach, the prosecution must either produce the witness or demonstrate the unavailability of the witness. "[O]nce a witness is shown to be unavailable, 'his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.' " (*Id.* at pp. 814–815.)

The issue in *Wright* was whether the statements of an unavailable child witness "bore sufficient indicia of reliability to withstand scrutiny under the [Confrontation] Clause." (*Wright, supra,* 497 U.S. at p. 816.) Since the statements were not admitted under a firmly rooted hearsay exception, but rather under Idaho's residual hearsay exception, the court considered whether there were " 'particularized guarantees of trustworthiness' " to be found in the circumstances under which the statements were made. (*Id.* at p. 819.) The analysis which followed is what Sanchez refers to as the residual trustworthiness test: "[The rationale behind firmly rooted hearsay exceptions is that] if the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial." (*Id.* at p. 820.) To be admissible under the constitutional standard, the evidence "must similarly be so trustworthy that adversarial testing would add little to its reliability." (*Id.* at p. 821.) "[U]nless an affirmative reason, arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." (*Ibid.*)

The California cases cited by Sanchez discuss the "trustworthiness" of certain types of hearsay under circumstances where the evidence at issue satisfied a well-

established exception to the hearsay rule under state law, but was objected to on the basis of the defendant's federal constitutional right of confrontation. (E.g., *People v. Cervantes* (2004) 118 Cal.App.4th 162, 170–177 [statement against penal interest (§ 1230) ]; *People v. Duke* (1999) 74 Cal.App.4th 23, 28–29 [same]; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 326–329, 334–335 [same].) As noted above, California does not have a catchall exception to the hearsay rule based on "indicia of reliability." (*Gonzales, supra,* 54 Cal.4th at p. 1289 & fn. 24; *In re Cindy L., supra,* 17 Cal.4th at pp. 27–28.) The trial court's ruling to exclude the statements Mr. Alejo and Mr. Apodaca as hearsay not subject to an exception was entirely consistent with state law, and thus did not constitute an abuse of discretion.

Having found no state law error, we reject Sanchez's federal constitutional claim regarding his right to present a defense. "Defendant's argument fails to account for the general rule that the application of the ordinary rules of evidence under state law does not violate a criminal defendant's federal constitutional right to present a defense, because trial courts retain the intrinsic power under state law to exercise discretion to control the admission of evidence at trial." (*People v. Abilez* (2007) 41 Cal.4th 472, 503.) Exceptions to this rule are rare, and have been found only in "extraordinary and unusual circumstances." (*Ibid.*) One of the best known examples of an exception to the general rule is *Chambers, supra,* which Sanchez relied upon below and cites again on appeal.

The defendant in *Chambers* was accused of murdering a police officer in 1969. Shortly after the crime occurred, a third party confessed to several friends that he had killed the officer. He later made a sworn confession to the crime. At trial, the defendant called the alleged perpetrator as a witness in an attempt to elicit the same information. The individual repudiated his confession on the stand, and the defendant was denied permission to examine him as an adverse witness based on Mississippi's " 'voucher' rule," which barred parties from impeaching their own witnesses. (*Chambers, supra,* 410 U.S. at pp. 294–295.) In addition, Mississippi law did not recognize an exception to the hearsay rule for statements made against penal interests, thus preventing the defendant from introducing evidence that the witness made self-incriminating statements to three other people. (*Id.* at pp. 297–299.)

Observing that Mr. Chambers' defense was "far less persuasive" than it might have been had he been allowed to admit testimony from other sources about the confession, the United States Supreme Court ruled that the hearsay statements came with "considerable assurance of their reliability" because (1) the confession was made spontaneously to a close acquaintance shortly after the crime occurred, (2) it was corroborated through other evidence, (3) the declarant's statements were diametrically opposed to his penal interests, and (4) the declarant was available in court for cross-examination. (*Chambers, supra,* 410 U.S. at pp. 300–301.) Given these circumstances, the Supreme Court concluded that the defendant had been deprived of his constitutional right to a fair trial. (*Id.* at p. 302.)

In *Ayala, supra,* the California Supreme Court considered whether a criminal defendant "had either a constitutional or a state law right to present exculpatory but unreliable hearsay evidence that is not admissible under any statutory exception to the hearsay rule." (*Ayala, supra,* 23 Cal.4th at p. 266.) Relying on *Chambers,* the appellant argued that the trial court had "infringed on various constitutional guaranties when it barred the jury from hearing potentially exculpatory evidence." (*Id.* at p. 269.) Our high court rejected this argument, holding that " 'Few rights are more fundamental than that of an accused to present

witnesses in his own defense. [But in] the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' Thus, '[a] defendant does not have a constitutional right to the admission of unreliable hearsay statements.' Moreover, both we and the United States Supreme Court have explained that *Chambers* is closely tied to the facts and the Mississippi evidence law that it considered. *Chambers* is not authority for the result defendant urges here." (*Ibid,* citations omitted.)

Although *Ayala* involved statements made to a defendant's own private investigator, the *Chambers* decision has specifically been held not to apply to a purported eyewitness's hearsay statements to police. (*People v. Kegler* (1987) 197 Cal.App.3d 72, 82–83.) "Not only was the declarant unavailable to explain those statements, but there was no indication that the statements were reliable, as they lacked the conventional indicia of reliability: they were not made under oath or other circumstances that impress the declarant with the solemnity of the statements; the declarant's word is not subject to cross-examination; and she is not available in order that her demeanor and credibility may be assessed by the jury." (*Id.* at p. 83.)

Considered against the backdrop of these authorities, we find no abuse of discretion by the trial court in its measuring of the trustworthiness of the hearsay attributed to Mr. Alejo and Mr. Apodaca. With regard to the latter witness, there were multiple levels of hearsay linked to unknown individuals. Mr. Apodaca's personal knowledge was limited to his observation that a Mercury Cougar was present in the vicinity of the crime scene several hours prior to the victim's death.

Mr. Alejo's statements raise questions about whether the woman to whom he referred in his conversations with police was actually Ms. Achutegui. Whereas several witnesses had said the victim was known as "Cuchi Cuchi" and worked at La Pantera Azul, Mr. Alejo spoke of a person who went by the nickname "La Huerda" and worked at "La Pandeda Bar." These important discrepancies would have certainly been addressed on cross-examination had the witness been available to testify. The prosecution also had no way of exploring the possibility that Mr. Alejo's statements were the product of coercion by Sanchez's friends and relatives, or that he had some other motivation to provide misleading information to the police. (See *Ayala, supra,* 23 Cal.4th at p. 269 ["Via cross-examination or further investigation the prosecutors might have discovered evidence, for example, that defendant had coerced [the deceased witnesses] into making [their statements], just as they had introduced evidence that he induced [another witness] to perjure himself...."].) Contrary to Sanchez's arguments, the truthfulness of the hearsay was not so obvious from the surrounding circumstances that the test of cross-examination would have been of marginal utility.

Furthermore, Sanchez was ultimately successful in getting the substantive information from the police reports admitted at trial for nonhearsay purposes. Through examination of Detective Chavez, the defense established that the police were told Ms. Achutegui had been seen at the location where her body was found on prior occasions, in or near a green Ford Torino that did not match the description of Mr. Sanchez's vehicle, with a person described as a Mexican male, approximately 5'5 in height and 145 pounds with dark hair and a moustache. The defense relied on this information to support its theory of third party culpability, including those arguments relating to the track width measurements taken at the crime scene. Sanchez fails to show how the trial court's hearsay ruling at the in

limine stage resulted in a violation of his constitutional right to present a defense at trial.

Sanchez, 2014 WL 3555780, at *3–8 (footnote in original).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986) (citations omitted) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)). However, a "defendant's right to present relevant evidence is not unlimited," and "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' *or* 'disproportionate to the purposes they are designed to serve.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (quoting Rock v. Arkansas, 483 U.S. 44, 56 (1987)). The Supreme Court "[o]nly rarely ha[s] . . . held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013).

"In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the United States Supreme Court clearly established that the exclusion of trustworthy and necessary exculpatory testimony at trial violates a defendant's due process right to present a defense." Cudjo v. Ayers, 698 F.3d 752, 754 (9th Cir. 2012). Chambers involved a defendant, Leon Chambers, who was charged with the murder of a police officer. Chambers, 410 U.S. at 286–87. On three different occasions shortly after the incident, another man, Gable McDonald, told three friends that he shot the officer. Id. at 292–93. McDonald subsequently signed a sworn confession that he shot the officer. However, at a preliminary hearing one month later, McDonald renounced his prior sworn confession. Id. at 287–88. Chambers called McDonald to testify at trial, but was not allowed to cross-examine McDonald as an adverse witness regarding the repudiation of the prior confession based on Mississippi's "voucher" rule. Id. at 291–92. Additionally, the trial court excluded as hearsay the testimony of the three friends to whom McDonald had confessed. Id. at 292–94.

The Supreme Court reversed Chambers's conviction, finding that "exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." Chambers, 410 U.S. at 302. The Supreme Court found that the hearsay statements at issue "provided considerable assurance of their reliability" because they were: (1) made spontaneously to a close acquaintance shortly after the murder; (2) corroborated by some other evidence in the case; and (3) against McDonald's penal interest. Further, McDonald was available for cross-examination. Id. at 300–01. The facts of Chambers have been described as "extreme," Ayala v. Chappell, 829 F.3d 1081, 1113 (9th Cir. 2016), petition for cert. filed sub nom. Ayala v. Davis, No. 17-5300 (July 20, 2017), and "Chambers specifically confined its holding to the 'facts and circumstances' presented in that case," Scheffer, 523 U.S. at 316.

Chambers is distinguishable from this case in material ways. In Chambers, the excluded evidence was a confession from a third party that directly exculpated the defendant. In contract, in the instant case, the excluded evidence was not directly exculpatory. In other words, even if the excluded evidence were true, it did not show that the Petitioner was definitely innocent. The excluded evidence merely indicated that a witness, Mr. Alejo, had seen a woman, who he believed was the victim, approximately two weeks earlier in the same area where the body was found. The woman had been accompanied by two men and one woman, and they congregated around a green Ford Torino. The witness had seen the woman in the green Ford Torino parked at that location on other occasions. Mr. Apodaca observed a reddish/brown Mercury Cougar drive out of the field where the victim was found several hours before the victim's death. Even if all of these facts were admitted and true, it was still possible for Petition to have committed the crime. Additionally, the hearsay statements at issue here had less assurance of their reliability than those in Chambers because they were not given spontaneously to a close acquaintance, were not corroborated by some other evidence in the case, and were not against the declarants' penal interest. Further, the declarants here were not available for cross-examination like McDonald in Chambers.

Based on the foregoing, the Court finds that the state court's determination regarding

exclusion of the hearsay evidence was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his first and second claims and they should be denied.

**B. Confrontation Clause**

In his third claim for relief, Petitioner asserts that the trial court violated his right to confront witnesses when the court failed to sustain his hearsay objection with respect to Detective Chavez's testimony that he had information that Petitioner was seen leaving the bar with the victim. (ECF No. 1 at 8, 20). Respondent argues that this claim is procedurally barred and that the state court's denial of the claim was reasonable. (ECF No. 28 at 19).

Petitioner raised this claim on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806.

In denying Petitioner's Confrontation Clause claim, the California Court of Appeal stated:

> *Background*
> The defense called Detective Chavez to the witness stand during its case-in-chief in an effort to criticize the original police investigation and suggest that detectives did not follow up on leads pointing to suspects other than Sanchez. It was through this examination of Detective Chavez that Sanchez's attorney elicited testimony concerning the information relayed to police by Robert Alejo and John Apodaca. On cross-examination, the prosecution asked the witness, "[I]sn't it true that part of the information that led you to believe that Felipe Sanchez committed this murder[,] and why you focused on him[,] was that he was seen—you had information he was seen leaving the bar with the victim that night?" Prior to the witness's answer, defense counsel said, "Objection, calls for hearsay." The trial court overruled the objection, and Detective Chavez responded affirmatively.
>
> Sanchez claims the trial court's failure to sustain the hearsay objection violated his right to confront accusing witnesses as guaranteed by the Sixth Amendment to

the federal Constitution, and was inconsistent with the holdings of the United States Supreme Court in *Crawford, supra.*

*Standard of Review*
"In reviewing the trial court's order overruling the hearsay objection, we apply the deferential abuse of discretion standard of review." (*People v. Fields* (1998) 61 Cal.App.4th 1063, 1067.) Legal questions concerning the constitutionality of admitting the challenged evidence are reviewed de novo. (See *People v. Seijas* (2005) 36 Cal.4th 291, 304 [independent standard of review should be applied to rulings which affect the constitutional right of confrontation].)

*Analysis*
As a preliminary matter, we are inclined to agree with respondent that Sanchez forfeited his claim by failing to object on constitutional grounds. (*People v. Redd* (2010) 48 Cal.4th 691, 730; *People v. Raley* (1992) 2 Cal.4th 870, 892 [hearsay objection insufficient to preserve a claim under the confrontation clause].) Although his attorney successfully moved in limine to "federalize" all objections made during trial, the California Supreme Court has indicated that the particular grounds for an objection must still be specified. (See *People v. Thomas* (2012) 54 Cal.4th 908, 938 [regarding failure to preserve a claim of prosecutorial misconduct: "Even to the extent that defendant's pretrial motion to 'federalize' all defense objections was granted, the effect of granting the motion was, as the trial court stated, that the trial objections would be 'deemed to be made under both California and Federal law.' This did not excuse defendant from the obligation of stating the *specific ground* for an objection in order to preserve the issue for appeal.") ].) Assuming arguendo that the issue was preserved in this instance, we find Sanchez's claim to be unfounded.

The Sixth Amendment to the United States Constitution provides that the accused in a criminal prosecution "shall enjoy the right ... to be confronted with the witnesses against him[.]" (U.S. Const. amend. VI.) This right of confrontation applies to certain types of extrajudicial statements. Where the statements at issue are testimonial hearsay, the confrontation clause prohibits their admission unless: (1) the declarant is unavailable; and (2) the defendant has been provided a previous opportunity to cross-examine the declarant. (*Crawford, supra,* 541 U.S. at pp. 53–54.)

"*Crawford* did not replace a conventional hearsay analysis. Instead, it added a second layer of inquiry when hearsay is offered against a criminal defendant." (*People v. Blacksher* (2011) 52 Cal.4th 769, 811.) The *Crawford* opinion also recognizes that statements offered "for purposes other than establishing the truth of the matter asserted" fall outside the scope of the confrontation clause. (*Crawford, supra,* 541 U.S. at p. 59, fn. 9.) Accordingly, the threshold issue is whether the challenged statements were, in fact, hearsay.

Out-of-court statements are admissible if offered for a nonhearsay purpose, i.e., for something other than the truth of the matter asserted, so long as the nonhearsay purpose is relevant to an issue in dispute. (*People v. Montes* (2014) 58 Cal.4th 809, 863 (*Montes*).) Pertinent here is the rule that "an out-of-court statement can be admitted for the nonhearsay purpose of showing that it imparted certain information to the hearer, and that the hearer, believing such information to be true, acted in conformity with such belief." (*Ibid.*) A statement that is offered to prove the effect on the hearer is nonhearsay because " 'it is the hearer's reaction to the statement that is the relevant fact sought to be proved, not the truth

of the matter asserted in the statement.' " (*People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.)

Sanchez's trial counsel invited the now challenged cross-examination of Detective Chavez by questioning the witness about why police focused their investigation on Sanchez instead of pursuing leads about other suspects. The follow-up question by the prosecution, and witness's response, were properly admitted for a nonhearsay purpose (effect on the listener) that was relevant to an issue in dispute, namely the reasoning behind the witness's investigatory efforts and decisions. (*Montes, supra,* 58 Cal.4th at p. 863.) Given the logical and legally permissible basis for admitting the evidence in a nonhearsay context, we reject appellant's assertions of error.

Sanchez, 2014 WL 3555780, at *8–10.

Although the California Court of Appeal noted that Petitioner's claim was forfeited because he failed to object on constitutional grounds, the court subsequently considered the claim on the merits. Therefore, this Court will consider the claim on the merits and apply AEDPA's deferential standard of review. See Clabourne v. Ryan, 745 F.3d 362, 383 (9th Cir. 2014) (finding that where state court denied relief on procedural grounds and alternatively addressed the merits, "AEDPA deference applies to this alternative holding on the merits"), overruled on other grounds by McKinney v. Ryan, 813 F.3d 798 (9th Cir. 2015) (en banc).

The Sixth Amendment's Confrontation Clause, made applicable to the states by the Fourteenth Amendment, Pointer v. Texas, 380 U.S. 400, 403 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) (citing Tennessee v. Street, 471 U.S. 509, 414 (1985)). See also Michigan v. Bryant, 562 U.S. 344, 367 n.11 (2011); United States v. Brooks, 772 F.3d 1161, 1167 (9th Cir. 2014).

Here, Detective Chavez's testimony was not used to establish the truth of the statements made to police, but to explain why the investigation focused on Petitioner rather than on other potential suspects. (8 RT[6] 2032–51). Therefore, the statements were not subject to the Confrontation Clause, and the Court finds that the state court's denial of the Confrontation

---

[6] "RT" refers to the Reporter's Transcript on Appeal lodged by Respondent on May 23, 2017. (ECF No. 29).

17

1 Clause claim was not contrary to, or an unreasonable application of, clearly established federal
2 law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking
3 in justification that there was an error well understood and comprehended in existing law beyond
4 any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is
5 not entitled to habeas relief on his third claim and it should be denied.

### C. Cumulative Error

In his fourth claim for relief, Petitioner asserts that the cumulative effect of excluding the hearsay statements of Mr. Alejo and Mr. Apodaca and admitting Detective Chavez's testimony violated his right to due process. (ECF No. 1 at 10). Respondent argues the state court's rejection of Petitioner's cumulative error claim was reasonable. (ECF No. 28 at 24).

Petitioner raised this claim on direct appeal to the California Court of Appeal, Fifth Appellate District, which denied the claim in a reasoned decision. The California Supreme Court summarily denied Petitioner's petition for review. As federal courts review the last reasoned state court opinion, the Court will "look through" the California Supreme Court's summary denial and examine the decision of the California Court of Appeal. See Brumfield, 135 S. Ct. at 2276; Ylst, 501 U.S. at 806. In denying the cumulative error claim, the California Court of Appeal stated: "Sanchez argues the cumulative effect of the errors alleged on appeal requires reversal of his conviction. The foregoing discussions dispose of this claim, as there are no errors to cumulate. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 567.)" Sanchez, 2014 WL 3555780, at *10.

"The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. . . . even where no single error rises to the level of a constitutional violation or would independently warrant reversal." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298, 302–03, 290 n.3 (1973)). As discussed above, the Court has found that no error occurred, and thus, there was no cumulative error. See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.").

Based on the foregoing, the Court finds that the state court's denial of the cumulative error claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of fact. The decision was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 562 U.S. at 103. Accordingly, Petitioner is not entitled to habeas relief on his fourth claim and it should be denied.

## V.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 14, 2017**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE